Our third and final case on the docket this morning is case number 110194, People v. Claudia Madrigal, Agenda No. 6. Mr. Fisher, are you prepared? Good morning, Your Honors. May it please the Court, Assistant Attorney General Garson Fisher for the People. Section 16G1587 of the Identity Theft Law adopts a reasonable means of pursuing a legitimate public interest and thus is not unconstitutional under the substantive due process protections of the United States or Illinois Constitutions. The prophylactic measure of barring people from the unauthorized use of another's personal identification information to gain access to records of that person's activities, communications, or transactions advances a legitimate state interest in combating a substantial increase in identity theft crimes, and thus the law satisfies a rational basis test. Nor has this Court consistently required lawmakers to so carefully craft criminal legislation such that it captures no innocent conduct in order to survive rational basis review. To the extent this Court has adopted a no innocent conduct test as part of its rational basis review, that test should be reconsidered, and if this Court reaffirms that test, then it should make clear that it is moving away from lockstep on this point. Rational basis review is a fundamental part of the due process inquiry, and under this Court's limited lockstep analysis as articulated in Caballus, the due process clauses of the Illinois and United States Constitutions are in lockstep. The language of the clauses are almost identical. The debates and committee reports of the Illinois Constitutional Convention indicate an intention for the clauses to mean the same thing, and there is no countervailing state tradition or values reflected in longstanding precedent to indicate something to the contrary. Given this, the problem with a no innocent conduct test is twofold. First, it appears to require perfection of the General Assembly in crafting criminal legislation such that it captures no conduct that's not relevant to its purpose. The United States Supreme Court said, for example, to use its language in Comstock, that a law need not be in every respect logically consistent with its aims to be constitutional, that it's enough that there is an evil at hand for correction, and that it might be thought that a particular legislative measure is a rational way of correcting it. In contract, the proffered no innocent conduct test, asking whether a statute potentially encompasses any innocent conduct, requires a criminal statute to be logically consistent with its aims in each and every case in order for it to survive rational basis review. In other words, if a law can be applied to any innocent conduct, then it's unconstitutional. And thus, this test undermines the deferential nature of the rational basis review as it's been articulated by the United States Supreme Court. The second problem is the use of the word innocent. It's the power of the General Assembly to decide which conduct is criminal and which conduct is innocent by assigning criminal penalties to certain conduct. The proper inquiry under rational basis review, and I believe the inquiry this Court has consistently engaged in, is whether a statute covers so much conduct irrelevant to its purpose as to render the statute an unreasonable means of pursuing that purpose. And reading the subsection 16G1587 in the context of the identity theft law as a whole, it's clear that it does not cover so much irrelevant purpose as to be an unreasonable means of pursuing the General Assembly's legitimate interest in protecting the state against the dangers of identity theft. Though the state concedes that it is not perfectly crafted to avoid applying to all behavior not relevant to that purpose. But the Supreme Court has made clear in cases like Vance and Lewis, perfection is not the standard here. Would we have to overrule cases such as Carpenter and Wick to reverse here? No, Your Honor. Not to the extent that the Court was applying the inquiry that I've articulated asking whether it covers so much conduct irrelevant to its purpose as to render it unreasonable. The people might disagree with the application of that test in Carpenter, for example, but it wouldn't require an overturning of Carpenter. If, however, Carpenter was decided in this Court's opinion on the basis of a no innocent conduct test, then yes, the people would ask that this Court overturn that. Are you asking, is it your position that courts should be able to write into these kind of statutes the requirement that they do not apply to innocent conduct? No, Your Honor. Again, first, I think that focusing on the conduct's relevance to the statute's purpose avoids any confusion with the General Assembly's authority to assign criminal penalties to conduct. And the people are not asking this Court to read into the statute anything that is not present in the identity theft law when it's viewed as a whole as drafted by the General Assembly. In Section 5, the General Assembly made its intent clear, and the purpose of any legislative interpretation is to give effect to the General Assembly's intent. Its intent was to apply to unauthorized use of personal identification information to access records. So we're not asking the Court to read an additional criminal purpose into the statute. We're not asking the Court to read anything into the statute that's not already in the identity theft law when viewed as a whole. And we are only dealing with A7 here, is that right? That is correct, Your Honor. There's no reason it wouldn't be severable from the remainder of the statute. But as this Court, to take a step back to Your Honor's previous question, as this Court stated in Bailey, it has a duty to construe a statute to confirm its constitutional validity, if possible, because such an interpretation that renders the statute valid is always presumed to have been intended by the legislature. And so given the clear purpose of the statute as laid out in Subsection 5, it's possible to read the statute in such a way that preserves its validity, even though the plain language of Subsection A7 may appear to apply to a wider array of irrelevant conduct. The language of the statute as a whole is probably best ambivalent on how wide an array it applies to, and thus we can look to the statute as a whole and the legislature's intent to come up with a constitutional reading. Counsel, your argument seems to admit to vagueness in the statute. I think what you're really asking this Court to do is read the statute so as to exclude innocent conduct. But how does that help to let the public know what is innocent conduct? And that's not in the statute. Your Honor, I have several answers to your question. First, I believe that the focus on unauthorized access to and use of personal identification information is in the identity theft law as a whole. I don't believe, in answer to the specific question about vagueness, that unauthorized as an element of a crime is any harder for the public or a jury to understand than the elements of any number of crimes. In fact, unauthorized is an element of several crimes under Illinois law. And third, to the extent that it could be argued in the future that a vagueness challenge to the statute might be appropriate, the defendant in this case would lack standing to raise such a challenge because her conduct falls within the core misconduct that's governed by the statute. She accessed, according to the charges against her, the victim's insurability rating and her credit report, which are clear to anyone, not the kinds of records that one would ordinarily authorize a member of the general public to access. It's not vague whether that conduct is innocent. I do not believe so, Your Honor. I think that falls within the core misconduct governed by the statute, and thus the defendant in this case would not have standing to make a vagueness challenge against the statute, which is why we're only up here on the question of whether violence is something of due process protections. There's a factual issue, isn't there, with respect to whether the defendant only received the insurability rating and not the credit report? Yes, Your Honor, there is, and that is the kind of factual determination that a finder of fact in a trial court could make. And in this case it wouldn't matter because the insurability rating, I think, alone, clearly falls within the kind of conduct that the legislature intended to attach criminal penalties to. It's not the kind of information that one would generally authorize another member of the public to access, and once armed with that information, the defendant might have been able to determine then, at that point, that the victim was a suitable target for some sort of fraud against her or against her employer, the insurance company, and so forth. And on that point, I want to understand your argument here. The state relies upon Williams, right? Yes, Your Honor. And for the proposition that in that case we upheld a statute that required a knowing mental state without an explicit criminal purpose, is that right? Correct, Your Honor. Okay. Looking at that case, we found that even the conduct the defendant proposes does not extend beyond the very conduct the legislature meant to punish. We had said that. And is it your position then that it seems like that the present statute does sweep in or may sweep in, let's put it that way, wholly innocent conduct beyond what the legislature meant to punish, but it's your position that even if we only look at the insurability report, that that is conduct that the legislature meant to punish, that it's not wholly innocent in and of itself? Yes, Your Honor. Several points in response to your question. First, yes, I agree, Your Honor, that our position is that even if we are just looking at the insurability rating, that this case does not implicate any conduct that's not relevant to the purpose of the statute. Second, Your Honor, Williams is an example of a case where the court held that it would thwart the General Assembly's intent to require some additional criminal purpose, and we agree that this is a similar type of statute in that it's a prophylactic measure, and that to require an additional criminal purpose would be to wait until harms that could take years or perhaps even be irrevocable to unwind had been done to the victim, to the state's economy, and so forth. So in the case of a prophylactic measure, to require an additional criminal purpose would thwart the very purpose of passing the prophylactic measure. I guess what I'm actually wanting to know from you, that you indicate that William illustrates the principle that the legislature may criminalize knowing conduct that lacks a criminal purpose if there is a reasonable risk that such conduct will have harmful consequences. If we think that Williams stands for the proposition that the conduct touted by the defendant in that case is innocent was not actually innocent, does that defeat your argument? I want to know if you're saying there is a criminal purpose here or not. There's no criminal purpose beyond knowing in this case. A couple of responses to that. First, I think that the U.S. Supreme Court has made clearer than an application of the rational basis test in determining that a statute is a reasonable means of pursuing a purpose, that simply identifying one or a limited number of examples of conduct not relevant to the purpose, so-called innocent conduct, does not render a statute irrational. And once it's been determined that a statute is a reasonable means of pursuing its purpose, under Salerno, and this Court has applied this long-standing principle in many cases, simply identifying a set of circumstances in which the application of a statute would not be valid doesn't render it facially unconstitutional. So requiring perfection, requiring that there are no examples of conduct not relevant to the statute's purpose, in order for a statute to survive rational basis review, undermines the deferential nature of rational basis review as it's been articulated by the U.S. Supreme Court. And if this Court wants to affirm that level of test, that level of scrutiny, then it should make clear that it's moving away from lockstep in application of the rational basis inquiry. Let me ask, are there First Amendment implications here? And if so, does that change the analysis in any way? I do not believe there are any First Amendment implications here. If there were First Amendment implications, then yes, it would entirely change the level of scrutiny that the law would be subject to. So explain to me why there's no First Amendment implication. The statute doesn't in any way infringe upon the defendant's right to speak or to, I mean, it restricts the rights or makes criminal the unauthorized access to certain records, but it doesn't in any way infringe on the defendant's rights to make a statement or to speak. Maybe speech might be a little bit more broadly defined than words coming from our mouth. Undoubtedly, Your Honor. And I am not thinking of any First Amendment, any valid First Amendment implications of this act. And certainly defendant hasn't articulated any First Amendment violations here. It's possible that a defendant could come up with an articulable argument that this does infringe on his First Amendment rights or her First Amendment rights in some way, at which point the court would have to address that question. And if it agreed, then subject the law to a higher level of scrutiny. Rational basis review is deferential, but it doesn't mean that the General Assembly can simply declare any conduct criminal and thereby stop people from engaging in that conduct. They can't infringe on a certain set of identified fundamental rights, including the rights articulated in the Bill of Rights and privacy and certain other things that the United States Supreme Court has identified. But when those rights aren't implicated, then the law is subject only to the very deferential rational basis review. And this law survives that review when it's read in the context of the identity theft law as a whole. Going from the sublime, perhaps, to the practical, I think I'm going to ask you the very elephant in the room kind of question. What happens if I Google your name and I find out that something about you? Isn't that the concern that's running behind the lives today in a technology age where information is available at the tip of our fingers, that most people of our time are doing exactly that kind of thing, using the name, which is specifically one of the identifiers in the statute, to find out about activities by other people? No, Your Honor, that would not be criminalized by the statute as read in the context of the identity theft law as a whole because it sort of requires several steps here, so bear with me. First off, a name is not the kind of personal identification information that in and of itself the use is not generally authorized by other members of the public. Although it is specifically one of the factors in the statute. And if it were used to access, knowingly used to access the kind of records that one would not generally want access by the public, using it to access records of bank accounts or bank transactions, so on and so forth, then you would be in violation of the statute. But if you use it to find out how someone did in the race judicata road race, that would not be an unauthorized use of personal identification information to gain access to records. So a fact finder would have to make some kind of decision about what kind, you know, the fact finder would have to make that choice. Yes. Is the using of someone's name to Google them to find out where they finished in the race, is that within the statute or not? This would be an issue for a jury to decide. Yes, Your Honor. And authorized and unauthorized are, you know, words that have simple, easy to understand definitions for a jury. I mean, it's permitted in essence. But you make no bones about the fact that you have to go outside of A7 to have that interpretation. Yes, Your Honor. But I don't believe that this court can deduce from the plain language of A7 that the legislature intended to criminalize Googling someone's name to find out how they did in a road race. It would be, I think we can concede, much harder to argue that that would be a constitutional statute under rational basis review. It would certainly incorporate and encompass a lot more conduct not relevant to its purpose. And it would also be arguably an absurd result to say that that was what the legislature intended to do. And so the language of the. Let's talk practical effect for a minute. Wouldn't it be better for your argument and maybe better for the system in general because of the type of thing that Justice Tice just brought up, the fact questions for the jury on each and every case, that the legislature tightens up this language a little bit? The language is not perfectly crafted. That doesn't render it an unreasonable means of pursuing its goal. It doesn't render it unconstitutional under rational basis review. Is the language ambiguous? Yes, Your Honor. I think it is because. Why is it ambiguous? Because it's looking at the identity theft law as a whole, the language of A5 talks about the unauthorized, the widespread availability and unauthorized use of this language. And then in A7, it suddenly appears to, in subsection 15A7, it suddenly appears to arguably under the plain language of that subsection apply to all use. And so I think it's analogous to the situation in Bailey where the subsection that was directly at issue in Bailey did not include some of the restrictions on conduct that were present elsewhere in the act. And the court, in order to provide a constitutional reading of the statute, said, well, it was the legislature's intent for those restrictions to apply to this subsection as well and thus applied them. I think this is an analogous situation where the plain language may appear to go to an arguably unconstitutional, perhaps absurd, wide brush. You'd have to admit if you just read that language and what Justice Tate suggested, it's a violation of the law. You read beyond that to say, well, they didn't mean to do that. Because the statute should be read in the context of the act as a whole and because the court has held that, where possible, it's duty to construe a statute in a way to preserve its constitutionality. Aren't people entitled to know whether their conduct is a violation of the law without having to go to court and prove that what they did isn't a violation? In other words, aren't we supposed to guard our laws, supposed to set the parameters of conduct for our citizens so that they know whether they're violating the law or not? I think that the people's proposed reading does define the law in a way and is all within the identity theft law. It's right there if one presumes the public to read the statutes to determine what conduct is criminal. It's all right there in the identity theft law to govern their behavior. And furthermore, as I mentioned before, to the extent that a vagueness challenge could be made, this defendant would have no standing to make a vagueness challenge. Her conduct, taking someone's name and without their knowledge or authorization, going through a system that accessed her insurability rating, which is not information that one goes around distributing to the public, and according to the charges accessed her credit report, something that concerned the defendant significantly enough that when she found out about it, she complained that this defendant's conduct falls so squarely within the core misconduct that's governed by the statute that she would have no standing for a vagueness challenge. Your Honor, as you see, my time is up. Thank you. Well, just a minute. Did you have another question? No, I'm good. Thank you. Mr. Zuelke? Yes, sir. Correct me if I'm wrong. Zuelke is absolutely right, yes, sir. I'm Don Zuelke. May it please the Court, I am Don Zuelke with the law firm of Zuelke and Bird, LLC. Mr. Zuelke, I do have a question for you. You didn't get started very much, did you? Oh, that's okay. We know you're Don Zuelke. That's all we know at this point, right? Yes, sir. Mr. Zuelke, you heard the question I asked of opposing counsel. Is your position contrary to opposing counsel's that if we were to reverse in this case, that we would have to overrule such cases as Carpenter and Wick? I believe absolutely, Your Honor, yes. But I do have a further question on that. Would you also agree that those cases, that line of cases, does seem to have a little bit, they do seem to have a little different analysis than the traditional rational basis does? Would you agree with that? Respectfully, I'm not sure I would agree with that, Your Honor. All right. And why not? Because I think that this Court has used the rational basis test, starting from Wick going all the way through Your Honor's opinion in People v. Williams, where you upheld the statute about unlabeled recordings. And the language sometimes has changed a little bit from Wick through Williams, but in all the cases that this Court has decided on this issue of cases where there's an allegation that the statute punishes innocent conduct and thus is a violation of substantive due process, the Court has used the same analysis. So I would think it's the same analysis, Your Honor. All right. Thank you. As has been pointed out already, we're dealing with just one of the paragraphs of the identity theft statute. At the time of this offense, there were seven different paragraphs. I think an eighth one has been added. But at the time of this alleged offense, there were seven paragraphs. The only one we're dealing with here today is A7. A1 through A5 all clearly deal with identity theft situation where you have somebody using somebody's personal information and then doing something wrong with it. A6 is a little bit different, but it still, I think, would probably survive scrutiny because it applies to the situation of somebody impersonating the person whose information they are seeking. A7 is the one that absolutely punishes all kinds of innocent conduct. I would go so far as to say that the innocent conduct that is punished in this statute is more than all of the other cases that this Court has decided combined, from Wick through Williams. The innocent conduct is just mind-boggling when you think about it. And I'm very thankful that Justice Tice raised the issue of First Amendment because I did not raise that in my brief. And as I was preparing for this argument, the more I thought about it, there are First Amendment implications here. If I want to do research and I want to write a biography about somebody, I might want to write a book about the Justice of the Supreme Court, about your prior activities prior to ascending to the Supreme Court, and I would be violating the statute by obtaining the information necessary to write that. And I think that certainly would implicate my First Amendment rights. There are just all kinds of scenarios that I could point out like that. The statute, I know one of the things that the trial court, when he struck down this statute, Judge Anderson from Kane County, he stated that he pointed out the example of somebody who is doing research on a doctor that they might be considering hiring or a lawyer. And the state in their brief responded, well, but that would be in the ordinary course of business, so it would be exempted. And I would ask the justices of this Court to closely read the exemption statute, which is 16G-40, which outlines what those exemptions are. And it really does not exempt anything that would be a violation of the statute that we're dealing with here. The exemption says in 16G-40 that this article does not prohibit the capture or transmission of personal identifying information in the ordinary and lawful course of business. So it only does not prohibit the capture or transmission of the identifying information. So, for instance, a name. It could be something as simple as a name qualifies as personal identification information. So the statute doesn't prohibit capturing or transmitting that information, but it doesn't say anything about the article not applying to somebody who then uses that personal identification information and obtains records of actions taken or activities or other things that are prohibited by the statute that we're dealing with here today. So that exemption doesn't offer us any protection from this statute. The Discourse on People v. WIC stated back in 1985 that we have consistently stated that the standard of a proper exercise of the police power is whether the statute is reasonably designed to remedy the evils which the legislator has determined to be a threat to the public health, safety, and general welfare. Most recently, in 2009, 25 years later, Justice Thomas wrote that the court did apply the rational basis test and held that the statute did not violate substantive due process because it bore a reasonable relationship to a public interest to be served and the means adopted were a reasonable method of accomplishing a desired objective. And that's been called most recently the rational basis test. They didn't use that terminology specifically in WIC, but it's the same test. In between that time, the court has struck down laws and upheld some laws. In at least one instance in the Taliver case, the court has added a mental state. That's the case that criminalized the possession of the title with incomplete assignment. And in Taliver, the court added the element because it was a strict liability offense as written. And the Supreme Court in Taliver said, well, because there's no mental state element in there that we are going to require that it's only a violation if it was done with a criminal purpose or some criminal knowledge. And in all of the precedents of this court, the court has indicated that the court will only add a mental state to require a criminal purpose or knowledge if there is no mental state already in the statute. In the statute we're dealing with here, Paragraph A7 of the Identity Theft Statute, we already have the mental state of knowledge. I believe it would be inconsistent with all those precedents for the court to try and add some kind of a further mental state to it. Now, I believe that it was said, well, one of the best quotes that I've seen is In Re Casey, which is one of the cases that I've cited. And that is where the Supreme Court struck down the criminal tampering or criminal trespass to vehicle statute. And in In Re Casey, the court stated, although the prevention of vandalism and malicious mischief are undoubtedly laudable goals, protecting otherwise innocent conduct from criminal prosecution is an equally laudable goal. And that's the situation that we're dealing with here today. As I've stated, this statute punishes, I believe, more innocent conduct than all the other statutes that have been struck down combined based on this type of analysis. Some of the things that Justice Tice pointed out, Justice Garmon, just Googling somebody, you've committed a felony. I punched in Ernie Banks' name the other day. Ernie Banks' home run record. And you get up all kinds of things to tell you what his records were, what his statistics were when he was a ball player. That is information about, I've used his personal identification information to obtain records of his activities when he was a very great baseball player. Excuse me. So the state has stated, well, the first argument is that this statute is reasonably related to the legislative objective. And I would respectfully disagree based on all of the myriad innocent conduct that is punished, far more than any other statute that's been dealt with by this court, I would submit. The state then tries to point out that the court should abandon this test. If they're going to have a no innocent conduct rational basis test, that that should be abandoned. And their citation, their authority for this is a long string of cases. Some are Illinois Supreme Court cases. Some are United States Supreme Court cases, none of which I would submit have anything to do with the situation that we're dealing with right here. And I'd like to point out some things. Because the funny thing about case law is you can make it say whatever you want if you just take an isolated sentence out of the case and say that's what the case stands for. But then when you read the case more closely, maybe it doesn't stand for that. So, well, first off, it's Salerno. People v. Salerno uses some very deferential case, very deferential language. And basically, under United States v. Salerno, which is a United States Supreme Court case, the challenger must show that no set of circumstances exists under which a statute might be valid. If that were the standard to be applied, the due process clause would be meaningless to protect us from abuses by the legislature. It would be meaningless because, for instance, if you want to outlaw, if you want to punish or prevent jaywalking, you pass a law saying people can't walk anymore. By this definition in Salerno, there are a set of circumstances under which the statute could be valid because as long as we could assume that police officers would only apply the statute when people were jaywalking, then it's a valid statute. But there are a whole lot of circumstances under which people might be arrested for just walking when they're not jaywalking. Drinking and driving. If you want to outlaw drinking, you want to deter or punish drinking and driving, so you outlaw driving. I think that would be a little bit too far by the test that this Court has set forth, but yet if you look strictly at the language of Salerno, that would be a valid law. Well, the interesting thing is this Court hasn't cited Salerno in any of the cases where you've dealt with this issue, whether a statute that punishes potentially innocent conduct violates due process. The reason this Court hasn't cited that language in any of those cases is because it doesn't apply to that scenario. The United States v. Salerno was a statute under the, it was not a criminal statute. It was a statute under the Federal Bail Reform Act, and it authorized pretrial detention if the federal government could prove the future dangerousness if the person were to be released on bail. The Court held that it did not violate the Eighth Amendment or substantive due process. The Court specifically held that it was not a punishment statute, that it was regulatory in nature and did not constitute punishment. And so Salerno has been cited by this Court in some civil applications and other applications, but not in the criminal context, and not in this context where we're dealing with a statute that punishes innocent conduct. I would submit it hasn't been cited because it's not relevant, because there are different interests when you're talking about protecting somebody from being arrested for innocent conduct versus deciding whether you're going to uphold a section of the Parentage Act in the INRI CE case, which is cited in the State's brief. Different interests. In the State, in their, on page three of their reply brief, the State cites Fleming versus Nestor. They cited for the proposition that in a substantive due process case, state action is invalid only if it manifests, excuse me, only if it, and then in quotes, manifests a patently arbitrary classification, utterly lacking in rational justification. You look at the case, Fleming versus Nestor, number one, it's not a criminal case. It's not the situation we're dealing with here, a statute that punishes innocent conduct. That statute upheld a statute that had cut off Social Security benefits to certain noncitizens who were deported for certain reasons. The United States Supreme Court went on to hold that the statute wasn't really a substantive due, it wasn't a due process case anyway because persons covered by the Social Security Act do not have an accrued, such an accrued property right as to be protected by the Fifth Amendment. Additionally, if you read the State's sentence on the bottom of page three, in a substantive due process case, state action is invalid only if, and then they have the quote, if you actually look at the case, that's not what it says. Exactly, but that part of the quote is there, but the first two-thirds of their sentence are left out. Particularly when we deal with a withholding of a noncontractual benefit under a social welfare program such as this, we must recognize that the due process clause can be thought to interpose a bar only if the statute, and then you have the quote that the State has in their brief, not meant to apply to this situation. Next case I'd like to point out on page six of the State's reply brief where they cite Comstock v. Lee Optical, and that also was not a criminal statute, it was a civil commitment of sexually dangerous persons who were about to be released from federal prison, and the Supreme Court upheld that, not under the due process clause, they upheld it under the necessary and proper clause of the United States Constitution. On page 1965, 1,965 of that opinion, the Supreme Court specifically stated, we do not reach or decide any claim that the statute or its application denies equal protection of the laws, procedural or substantive due process, or any other rights guaranteed by the Constitution. Respondents are free to pursue those claims on remand and any others that they have preserved. It's not a substantive due process case. Justice Kennedy, in his concurrence, does mention the language that the State cites, that the law need not in every respect be logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it. That language is in there in a concurrence, and Justice Kennedy writes it, and I believe it's a fair reading of his using that language that he's actually being critical of that. He's certainly being critical of it as applied to the analysis in this case, which was under the necessary and proper clause, and I believe he's expressing some caution about it, in a due process application. And the case that he pulled that quote out of is People v. Williamson v. Lee Obstacle, a United States Supreme Court case from 1955. That case was not a criminal case, of course. That was a regulatory case, regulating the conduct of opticians, optometrists, deciding who can put glasses and eye frames and things like that. And the court did use the language as cited in the Attorney General's brief. However, immediately following that, the Supreme Court says, the day is gone when this court uses the due process clause of the 14th Amendment to strike down state laws regulatory of business and industrial conditions, because they may be unwise, improvident, or out of harmony with a particular school of thought. This case was not meant to apply to our situation. I'm not aware of any federal case where the language from Salerno, from this Lee Optical case, this language is not cited in the context that we're dealing with here, in any of the cases that I'm aware of. Next case I'd like to point out, on page 8 of the State's brief, they cite People v. Garvin, and they have two separate quotes in one sentence. And the first quote is, as to mount a successful facial challenge, the defendant must fulfill the difficult task of establishing the statute's invalidity under any set of facts, end of quote, and therefore the law survives so long as, and then we have a new quote, under at least one set of facts, the statute is constitutionally valid. Well, the problem with that, number one, the People v. Garvin was a criminal case in a sense, but it wasn't a criminal statute that punished any kind of conduct. It was a statute they were dealing with that dealt with whether a convicted felon had to give DNA. Number two, the issue was decided under the Fourth Amendment, and number three, it's not exactly quoted as is in the Attorney General's brief, because the first part of his quote, to mount a successful facial challenge, the defendant must fulfill the difficult task of establishing the statute's invalidity under any set of facts, end of quote, that part is in there. But the second part, where he says, and therefore the law survives so long as, and a new quote, under at least one set of facts, the statute is constitutionally valid, I've read the case ten times more, I cannot find that language anywhere in there. It certainly doesn't follow the first part of the State's quote, and I'm sure it's inadvertent on his part, and I think maybe that's his opinion on what that first quote means, but it's not in the case, and I think he misconstrues what that first quote means, because when they say that you must establish the statute's invalidity under any set of facts, I think they mean as opposed to a vagueness challenge, because in a vagueness challenge, you look to the facts of the case that you're dealing with in the case at bar, whereas in a facial challenge to a statute, the facts in the case at bar are irrelevant. I believe they're irrelevant, and all the cases where this Court has decided a facial challenge, you might have referred to the facts of the case, but you've never said the facts of the case are dependent upon our ruling. The last case that I'd point out to the Court is People v. Wilson, which the State cited at the bottom of page eight of their reply brief. The defendant cannot escape application of a statute by arguing that it might be unconstitutional as applied to someone else, and they're using that to try and show why the quote was wrong in WIC, and it's just apples and oranges. That language, Wilson, was a vagueness statute and not a facial challenge to the statute. I don't think there's any case law that says that this Court has been doing anything wrong for the last 25 years. The case law that you've handed down on this issue is reasonable, it's rational, it's consistent. It's very clear, I think, this statute fails under that test. The State proposes that you add some kind of additional element. Justice Freeman pointed out about the vagueness issue. This statute is not vague as it's written. It's clear that the legislatures wrote it very clearly. They want to punish all this conduct, want to sweep in all this conduct, or maybe they didn't think about it. This statute would only be vague if you followed the Attorney General's request and somehow added some kind of a test to try and make it a valid statute. Then you would create all kinds of vagueness. So for all those reasons, I would respectfully ask that this Court uphold the decision of the Honorable Judge Allen Anderson from Kane County in dismissing the case that we're dealing with here and in striking down this statute as a violation of substantive due process. Thank you. In your position, it's just what, A7? Yes, sir. Yes, Your Honor. Thank you, Mr. Zolke. You're welcome. I'm going to start, Your Honors, by addressing defendants' points about Salerno. I think there's a certain lack of clarity about how Salerno applies. I think it's a well-established principle both in the United States Supreme Court and in this Court that a facial challenge to the constitutionality of a statute requires that the statute be unconstitutional under every set of circumstances in order for it to be unconstitutional. That's what a facial challenge means. However, before getting to the inquiry under Salerno, this Court has to determine whether the statute is constitutional. This Court could certainly look at a statute, say it applies to so much conduct that's irrelevant to its purpose that the statute is not a reasonable means of pursuing that purpose, and therefore the statute fails the rational basis test. That statute is then unconstitutional under any set of circumstances, and Salerno isn't a factor. The people's point regarding Salerno is, if this Court analyzes the conduct that's covered by the statute and says, well, it doesn't cover so much irrelevant conduct as for the statute to be an unreasonable means of pursuing its purpose, the statute then would survive rational basis review. The fact that the Court could then go on and identify a set of circumstances under which the statute would not be constitutionally applied doesn't mean it would fail a facial constitutional challenge under Salerno. But first, it does obviously have to survive rational basis review, which does properly ask that question, whether a statute covers so much conduct irrelevant to its purpose as to render it an unreasonable means of pursuing that purpose. And the reason that I keep emphasizing the relevance of the conduct to the purpose is that it's not disputed that the General Assembly has the authority to determine whether specific conduct is criminal or innocent. And to say that that conduct is innocent, if the General Assembly has said, no, that conduct is criminal, infringes on that authority of the General Assembly. The General Assembly doesn't have the authority to paint conduct as criminal with so wide a brush that it encompasses excess conduct that's not relevant to its purpose in identifying that conduct as criminal. But it does have the authority to determine which conduct is criminal and which conduct is innocent. I know we spoke earlier about the fact that the defendant hadn't raised a First Amendment argument in context of this, this challenge to the constitutionality of the statute. But I do think it's important to address the points the defendant has now made. I think defendant is confusing speech and access. The fact that it is illegal to access information in certain ways doesn't infringe on the First Amendment right to speech. If someone were writing a biography of one of the justices, it would not be legal to break into the justice's house and steal information just because that information might better inform the biography. It is not an unconstitutional violation of the First Amendment to restrict the ways in which one goes about accessing information. Also, I think in response to defendant's argument that this court has not read additional mental states into statutes where there's already a mental state stated in the language of the statute. People are not asking this court to read an additional mental state into the statute beyond knowing. In addition to, for example, the prohibitions against knowingly carrying a loaded weapon, courts in this state have upheld statutes that make it a crime to knowingly impersonate a police officer, a crime to knowingly observe another person voting, all without any additional criminal purpose as an element of the crime because those are circumstances where a prophylactic measure was deemed appropriate by the General Assembly. And just because the General Assembly has also created additional crimes that make it illegal to engage in further criminal conduct once they've armed themselves with this kind of personal identification information and these kinds of records, doesn't mean that the General Assembly lacks the authority to pass a prophylactic measure so long as that prophylactic criminal statute is a reasonable means of pursuing its legitimate purpose in this case. As mentioned, it's the purview of the General Assembly to determine whether specific conduct is criminal or innocent. And this subsection, we acknowledge Paine's conduct as criminal with a pretty wide brush, but that doesn't make it unconstitutional because the defendant has run through some of the cases that people have cited as examples of the deferential nature of the rational basis standard to point out that they weren't criminal or some of the factual distinctions. People aren't arguing that these cases are factually similar enough that we need to engage in a case comparison here, but they do illustrate the fact that rational basis review has historically been, both in this court and the United States court, a very deferential standard of review. Perfection is not required under rational basis review. Perfectly eliminating all conduct irrelevant to the purpose of the statute is not required to survive rational basis review. And the General Assembly shouldn't be required to thread a needle in order to pass constitutional remedies to the evils that confront the state. So the people believe this court should hold that Section 16G, 1587 does not violate defendants' substantive process rights under either the United States or Illinois Constitution. But if this court does hold that the law is unconstitutional, people ask that it make clear that it does so applying rational basis review as articulated by the United States Supreme Court, and that Illinois law does not incorporate a no innocent conduct test into this inquiry. And if this court does reaffirm a test in which any statute that incorporates any conduct not relevant to its purpose is going to fail rational basis review, then the court should make clear that it's moving away from lockstep on that point. People respectfully request that this court vacate the judgment of the Circuit Court of King County and remand for proceedings consistent with this opinion. Thank you, Your Honor. Thank you, Mr. Fisher. Case number 110194, People v. Claudia Madrigal. Agenda number six is taken under advisement. Mr. Marshall.